IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION



FILED

OCT - 2 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**LURIA NICOLE GREENE,**

Plaintiff/Appellant,

v.                                                              CIVIL NO. 4:13cv79

**U. S. DEPARTMENT OF EDUCATION,**

Defendant/Appellee.

## OPINION AND ORDER AFFIRMING DECISIONS OF BANKRUPTCY COURT

This matter comes before the Court on Luria Nicole Greene's ("Greene") appeal from the Unites States Bankruptcy Court for the Eastern District of Virginia's December 6, 2012 decision dismissing Greene's amended complaint and April 22, 2013 decision denying Greene's Motion to Reconsider and Motion to Amend and for a New Trial. For the reasons set forth in this opinion, the Court **AFFIRMS** the decisions of the bankruptcy court. At the time of this Order there are four motions filed by Greene that are outstanding in this case, all of which are rendered moot by this Order. Therefore, the Court **DENIES** the Motion for Guardian Ad Litem or Court Appointed Counsel, ECF No. 11, **DENIES** the Motion for Reconsideration of Order on Motion for Leave to Proceed in Forma Pauperis, ECF No. 22, **DENIES** the Second Motion for Leave to Proceed in Forma Pauperis, ECF No. 20, and **DENIES** the Motion for Rehearing and Motion for Rehearing en Banc on Appellant's Motion for Certification for Direct Appeal, ECF No. 27.

### I.  PROCEDURAL HISTORY

Greene filed for Chapter 7 bankruptcy on or about June 7, 2010. On April 18, 2011, Greene filed this adversary proceeding against the U.S. Department of Education ("DOE")

1

seeking to discharge her student loan indebtedness. After having her complaint dismissed in part and being directed to file an amended complaint, Greene filed her amended complaint on August 22, 2011. DOE filed a timely answer.

On August 17, 2012, Greene filed a Motion for Continuance of Trial "to allow plaintiff the opportunity to obtain additional information and documents needed for trial." Mot. for Continuance of Trial, ECF No. 1 at 93. On August 22, the bankruptcy court denied the motion to continue. Trial was held on September 7, 2012. At the trial, Greene testified on her own behalf, submitting exhibits to the court, citing case authority, and asking for leave to file a post-trial brief. Greene filed her post-trial brief on September 28. DOE filed its own brief on October 12, after which Greene filed a reply brief on October 19.

The bankruptcy court issued its opinion and order dismissing the amended complaint on December 6, 2012. On the whole, the court noted that:

> Ms. Greene presented herself during the totality of the proceedings in this matter as a very articulate, well-spoken individual. The Court further notes that Ms. Greene's pleadings, including her twenty-four (24) page Brief and thirty-two (32) page Reply Brief, are extremely well-drafted, particularly for an unrepresented litigant.

*In re Greene*, 484 B.R. 98, 107 (Bankr. E.D. Va. 2012). The court found that Greene had failed to satisfy any of the three prongs of the *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2nd Cir. 1987), test as adopted in the Fourth Circuit by *In re Frushour*, 433 F.3d 393 (4th Cir. 2005).

Following the December 6 decision, Greene began to file a multitude of motions. On December 20, 2012, she filed her Motion for Reconsideration. In that motion she raised new constitutional arguments that had not been presented at trial or in any earlier pleadings or briefs. Greene also filed a Motion for a New Trial and Motion to Amend Findings of Fact on December 20. In that motion, she attempted to submit to the court medical and job search

records that she did not submit at or before trial. She also asked the court to allow her to submit the "professional conclusions" of Felicia Powell, DQS Behavioral Healthcare Group and to amend findings of fact in the December 6 opinion.

On January 4, 2013, Greene filed Plaintiff's Motion for a Court Appointed Attorney. The court *sua sponte* denied that motion on January 17. The court observed that there was no indication that Greene had been unable to competently represent herself during the nearly two years that the matter had been pending. On January 25, Greene filed a motion to reconsider the court's denial of the motion for a court appointed attorney. Included in that motion, in addition to repetition of her conclusory allegations concerning her mental health, were a discharge paper from Riverside Regional Medical Center and printouts from webpages concerning dissociative disorder, which Greene alleged to suffer from. The discharge paper provided little more information than the fact that during her emergency room visit she was seen for post-traumatic stress disorder and was diagnosed with dissociative disorder. However, nothing was included in the report explaining what tests were conducted, how Greene was examined, or the severity of any mental impairment. On February 19 the court denied the motion to reconsider. The court found that the exhibits attached to the motion to reconsider did not meet the standard for reconsideration.

Also on February 19, 2013, Greene filed her Reply for Motion to Reconsider Court Appointed Counsel and Motion for Guardian Ad Litem or Other Order to Protect Incompetent. The motion, like the others before it, contained more conclusory allegations about her mental state. On March 1 the court issued an order stating that it would not disturb its decisions of January 17 or February 19 denying Greene court appointed counsel or guardian ad litem.

On April 22, 2013, the bankruptcy court issued its decision denying Greene's Motion to

Reconsider and Motion to Amend and for a New Trial. On May 6, Greene filed notice of appeal from the bankruptcy court. However, on June 3, before the appeal was docketed in this Court, Greene filed a Motion for Certification to Court of Appeals in the bankruptcy court. On June 10 the bankruptcy court *sua sponte* issued an order denying Greene's motion. Her appeal was then docketed with this Court on June 10.

On June 24, Greene filed another Motion for Certification to Court of Appeals, this time filing the motion with this Court. DOE filed their response to the motion on July 8.

On July 9, Greene filed her Appellant's Brief.

On July 12, she filed a Motion for Leave to Proceed in Forma Pauperis as well as a Motion for Guardian Ad Litem or Appointed Counsel. DOE filed timely Responses to each motion.

On July 30, DOE filed its Appellee's Brief. Greene filed a twenty-five page Reply Brief on August 7. The second-to-last paragraph of that brief contained the following: "I understand that I shouldn't really file papers in this case. But, this case is so compelling and plaintiff's circumstances so pitiful that I felt compelled to help her...So I helped out." In light of the admission that a ghost writer was being utilized by Greene, the Court entered an Order on September 9 requiring that Greene disclose information concerning the identity of the ghost writer. Greene gave the Court the name, address, and phone number of the ghost writer; however, the Court did not use the information to make any further determination as to the ghost writer.

On August 30, 2013, Greene filed a motion for an emergency injunction to prevent the transfer of her student loan debt from DOE to a loan service provider. However, the Court found no reason to believe that DOE was transferring actual ownership of the loan and therefore denied

the motion for emergency injunction on September 5.

The Court also denied the Motion to Proceed in Forma Pauperis on September 4 on account of Greene's failure to provide any expenses or debts which might qualify her for such relief. On September 5, Green filed a Motion to Reconsider the denial of her motion to proceed in forma pauperis. On September 6, she filed a Second Motion to Proceed in Forma Pauperis, and on September 9 she filed a "Supplement" to that motion.

On September 18, 2013, the Court denied Greene's Motion for Certification to Court of Appeals on the grounds that her appeal was based on mixed questions of law and fact. On September 20, Greene filed a motion seeking rehearing or rehearing en banc of her motion for certification.

As noted at the beginning of this Opinion, the four outstanding motions are rendered moot by this decision and are therefore denied.

## II. STANDARD OF REVIEW

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The Bankruptcy Court's application of the law is reviewed de novo while findings of fact will not be set aside unless they are clearly erroneous. *In re Biondo*, 180 F.3d 126, 130 (4th Cir.1999). "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quotation omitted). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Id.*

In order to discharge a student loan obligation pursuant to § 523(a)(8) of the Bankruptcy Code, a debtor must demonstrate that excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8). In order to

5

establish undue hardship, the Fourth Circuit has adopted the Second Circuit's three-prong *Brunner* test, requiring that a debtor demonstrate by a preponderance of the evidence that: (1) she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay her student loan obligation; (2) additional circumstances exist indicating that her state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) she has made good faith efforts to repay the loans. *In re Frushour*, 433 F.3d at 400 (citing *Brunner*, 831 F.2d at 396).

### III. FACTUAL BACKGROUND

After reviewing whether the bankruptcy court's determinations of fact were "clearly erroneous," the Court finds that the determinations were not clearly erroneous. The bankruptcy court's summary of the stipulations of fact between the parties is as follows:

> Prior to trial, Ms. Greene and the United States entered into an extensive Stipulation ("Stipulation") regarding Ms. Greene's educational background, the terms of the Student Loan, her income and expenses, and assets, which the Court accepted at trial. In summary, the Stipulation provides that Ms. Greene is well-educated, possessing two bachelor's degrees, including one in civil engineering from The Johns Hopkins University, and has undertaken extensive graduate work and other course work. Ms. Greene incurred a substantial amount of student loan debt that was consolidated in 2004 into the Student Loan, which provides it will be repaid under the Income Contingent Plan. Because Ms. Greene's adjusted gross income since the Student Loan has entered repayment has always been less than the Poverty Level Guidelines established by the United States Department of Health and Human Services, her monthly payment under the Income Contingent Plan has always been and remains $0.00. Accordingly, Ms. Greene is not in default on the payment of the Student Loan. The Stipulation also establishes Ms. Greene has lived in an impoverished state since obtaining the Student Loan and currently owns minimal property.

*Greene v. U.S. Dep't of Educ. (In re Greene)*, 484 B.R. at 103-104 (footnote omitted). Per the terms of the Income Contingent Plan, her student loan will be forgiven after twenty-five years, with nine years having already passed since she consolidated her loans in 2004. Greene's testimony at trial echoed the contents of the Stipulation. *Id.* at 105. Additionally, the court noted

6

that, although she asserts that she suffers from debilitating mental illness, Greene failed to provide the court with any foundation for such allegations. *Id.* at 105-106. It is due to this alleged mental illness that Greene claims to be unable to find gainful employment. *Id.* Finally, the court noted, as has been cited *supra* in the section I of this Opinion, that:

> Ms. Greene presented herself during the totality of the proceedings in this matter as a very articulate, well-spoken individual. The Court further notes that Ms. Greene's pleadings, including her twenty-four (24) page Brief and thirty-two (32) page Reply Brief, are extremely well-drafted, particularly for an unrepresented litigant.

*Id.* at 107.

### IV. ANALYSIS

In her appeal Greene utilized a "kitchen sink" approach. That is, she challenged seemingly anything and everything that she could think to challenge. Many of Greene's issues on appeal are duplicative or subsumed by other issues. The Court in this opinion has consolidated the issues on appeal and will address the general categories of appeal.

#### A. GREENE FAILED TO SATISFY THE FIRST PRONG OF THE *BRUNNER* TEST

The first prong of the *Brunner* test, as adopted in the Fourth Circuit by *Frushour*, states that the debtor must show "that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Frushour*, 433 F.3d at 400. The debtor has the burden of proving the factor by a preponderance of the evidence. *Id.*

The bankruptcy court found that Greene maintained a minimal standard of living. *Greene*, 484 B.R. at 110. While this Court agrees that her standard of living is below what most people would wish to have, that does not mean that the bankruptcy court erred in making its determination.

Given that she maintained a minimal standard, the question then becomes whether, if

7

forced to repay her loans, she would be unable to maintain a minimal standard of living. However, her monthly payment is $0 under the Income Contingent Plan. As the bankruptcy court properly noted, the *Brunner* analysis contemplates whether, based on "*current* income and expenses, the necessity of making *the monthly loan payment* will cause his or her standard of living to fall below a 'minimal' level." *Id.* at 115 n. 13 (quoting *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752, 754 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987) (emphasis in original).

Greene has put forth no arguments as to how her monthly payment of $0 causes her to fall below her current standard of living, which the bankruptcy judge had adjudged to be minimal. Her arguments as to how she is negatively affected by the student loan debt are that she cannot obtain "steady or well-paying employment" or "affordable housing" as a result of the negative impact that the debt has on her credit score. Appellant's Brief at 7. However, Greene failed to introduce any evidence into the record that she has been so impacted. The Court does not dispute that a poor credit score can hurt a person's employment prospects as to certain jobs. However, it is not apparent to this Court that a poor credit report precludes one from all "steady or well-paying employment." In fact, in light of Greene's earning history it appears that she has never been able to obtain what she might consider steady or well-paying employment at any time, regardless of the size of her loan debt.

Greene's allegations concerning affordable housing are equally unpersuasive. The Court again does not dispute that poor credit scores can preclude one from certain types of housing. However, Greene has not introduced any direct evidence of her inability to obtain housing due to her credit score. The sole related exhibit that she has submitted is a one-page printout from the Hampton Redevelopment and Housing Authority. The printout only states that in order to get on

the Public Housing waiting list one's credit history "must be satisfactory; no unsatisfied judgments or collections for current or previous landlords." There is no further explanation of what constitutes "satisfactory" or whether Greene's credit history would qualify. From her trial testimony it appears that if Greene did actually apply to be put on the waiting list and was denied it was not due to any negative affect that her student loan debt had on her credit score.[1]

Additionally, such potential negative credit score effects are not specific to Greene's circumstances. Any person who takes on substantial loans also takes on the commensurate burdens. The *Brunner* test, after all, ultimately asks whether the debt in the plaintiff's individual case causes an undue burden due to "unique or extraordinary circumstances." *Love v. U.S. (In re Love)*, 33 B.R. 753, 755 (Bankr. E.D. Va.1983). Regardless, the affect that the debt may or may not have on Greene's credit report and any subsequent consequences are not material to the *Brunner* analysis. "This kind of hardship, however, is not the hardship contemplated by § 523(a)(8) and *Brunner*. That 'undue hardship' is the hardship the payments would cause the debtor, not the collateral effect of having the debts appear on her credit report." *Robinson v. Educ. Mgmt. Corp. (In re Robinson)*, 416 B.R. 275, 282 (Bankr. E.D. Va. 2009). Therefore, even if Greene could show that her student loan debt would hurt her employment and housing prospects, it would be irrelevant to whether or not her *payments* under her loan repayment plan cause her undue hardship.

Greene finally argues that the bankruptcy court should have accounted for the potential tax liabilities that she would incur once the 25 year repayment period is complete and her remaining loan balance is written off by DOE. The bankruptcy court correctly found that this

---

[1] "I had actually tried to get into public housing, and I actually had spoken to someone a couple of times and the problem kept coming back to if you had -- if you don't pay your utilities on time all the time or if you are behind on your rent ever then that pretty much disqualifies you. It was in writing. I saw that. So I didn't qualify for that." Trial Transcript at 13-14.

argument is too speculative. *See In re Burton*, 399 B.R. 856, 889 (Bankr. E.D. Va. 2006); *Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley)*, 300 B.R. 813, 818 n. 8 (N.D. Fla. 2003). Even if the Court were to assume, *arguendo*, that Greene's current situation would mirror her situation in 2029 at the end of the twenty-five year repayment period, her argument would still be unpersuasive. 26 U.S.C. § 108(a)(1)(B) states that a debtor who is insolvent at the time of the discharge will not have the discharge included in their gross income calculation. Greene's asserted assets are around $2,200, while the amount of her student loan debt is well over $200,000. This clearly makes her insolvent, which would nullify her tax liability.

The Court finds no reason to overturn the bankruptcy court's determination that Greene maintains a minimal standard of living. Greene has not set forth any persuasive arguments as to how her current monthly payment of $0 causes her to fall below her current standard of living. Therefore, the Court affirms the bankruptcy court's finding that Greene has failed to satisfy the first prong of the *Brunner* test.

### B. GREENE FAILED TO SATISFY THE SECOND PRONG OF THE *BRUNNER* TEST

Greene also asserts that the bankruptcy court incorrectly applied the second prong of the *Brunner* test, which is that additional circumstances exist that show that the Debtor's current state of affairs is likely to persist for a significant portion of the repayment period. Generally, the second prong may be satisfied by proving that the debtor suffers from "illness, disability, a lack of usable job skills, or the existence of a large number of dependents." *Frushour*, 433 F.3d at 401 (quoting *Oyler v. Educ. Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005)). Greene asserted that her mental illness and lack of usable job skills satisfied this requirement.

The opinion of the bankruptcy court quite adequately addressed those allegations and properly found that Greene failed to prove them by a preponderance of the evidence. As to her alleged mental illness, she has continually and strenuously asserted throughout these proceedings

that it is undisputed that she suffers from mental illness and that her illness is so severe as to prevent her from accomplishing such menial tasks as filling out a simple two page form while seeking leave to proceed in forma pauperis (despite her ability to spend fifteen years as a student in higher education). *See, e.g.*, Pl.'s Mot. for Reh'g and Mot. for Reh'g En Banc on Appellant's Mot. for Certification for Direct Appeal, ECF No. 27. However, this fact is very much disputed, not only by DOE (*See, e.g.*, Appellee's Brief at 16, ECF No. 14), but by the bankruptcy court's own findings. *See, e.g.*, Order Den. Mot. for Ct. Appointed Att'y, ECF No. 6. The only support that Greene has provided throughout the entirety of these proceedings in support of her mental illness has been twenty year old medical records, a completely uninformative emergency room diagnosis, and her many conclusory allegations. Considering the dearth of support offered by Greene, the Court can find nothing erroneous with the bankruptcy judge's determination, which included consideration of his own in-person observations of Greene during trial, that Greene failed to provide the court with enough evidence to establish that her mental condition exists or that it would constitute an "additional circumstance" under the second *Brunner* prong.

As to Greene's alleged lack of usable job skills, Greene asserts that her education is outdated and that she possesses minimal work experience. However, her extensive time spent in higher education belies an intelligence that prevented the bankruptcy court and prevents this Court from finding that she lacks usable job skills or the ability to obtain such skills.

Greene failed to show that additional circumstances are present that show that the Debtor's current state of affairs is likely to persist for a significant portion of the repayment period. Therefore, the bankruptcy court properly found that Greene failed to satisfy the second prong of the *Brunner* test.

### C. GREENE FAILED TO SATISFY THE THIRD PRONG OF THE *BRUNNER* TEST

The third *Brunner* factor required Greene to show that she had "made good faith efforts

to repay [her] loans." *Frushour*, 433 F.3d at 402 (quoting *Brunner*, 831 F.2d at 396). An integral part of satisfying the third prong is showing that the debtor made efforts to "obtain employment, maximize income, and minimize expenses." *Burton*, 339 B.R. at 882 (quoting *Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 779 (7th Cir. 2002)). There is no dispute that Greene minimized her expenses. However, the bankruptcy court found that she had not made good faith efforts to obtain employment and maximize income:

> Greene testified that she has dramatically limited the type of work she will accept because of her anxiety disorder and her inability to work in an office environment where men are present. If her disorder is genuine and her inability to work with men present does in fact flow from her medical disorder, then her lack of success in employment does not necessarily influence a finding of a lack of good faith on her part. However, as detailed extensively earlier, absolutely no corroborating evidence to support her claimed disorder was adduced. Ms. Greene is well-educated, including a degree in civil engineering from a most prestigious university, and presented herself to this Court as a capable individual. The absence of any corroborating proof prevents this Court from assuming that Ms. Greene's long unemployment and underemployment are the product of a disability or other events beyond her control. The resulting picture is of a well-educated, articulate woman who has explained her chronic underemployment but failed to produce any proof other than her admitted self-diagnosis that is unsupported by any medical evidence.

*Greene*, 484 B.R. at 131. Even considering the medical evidence she submitted later in the proceedings (namely, the 20 year old reports and uninformative emergency room discharge report) Greene did not provide enough evidence of a mental illness such that this Court can find error in the bankruptcy judge's determination that Greene made good faith efforts to obtain employment and maximize her income. Therefore, the bankruptcy court correctly found that Greene failed to satisfy the third prong of the *Brunner* test.

### D. GREENE FAILED TO TIMELY RAISE HER CONSTITUTIONAL OBJECTIONS

Greene also asserts that the bankruptcy court's decision denied her equal protection and due process as provided by the Constitution. However, these arguments were not presented to the bankruptcy court until Greene filed her Motion for Reconsideration on December 20, 2012.

12

> Motions for reconsideration allow "a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings,'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted). They "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.*

*First Cmty. Bank v. E.M. Williams & Sons, Inc.*, 2010 WL 1279094 at *4 (E.D. Va. March 30, 2010). Raising an issue for the first time in a motion for reconsideration is not appropriate unless doing so will prevent manifest injustice. *Id.* at *5; *see also Pole v. Randolph*, 570 F.3d 922, 938 (7th Cir. 2010) ("Arguments raised or developed for the first time in a motion to reconsider are generally deemed forfeited."). In this case, it does not appear that any manifest injustice will result from declining to hear Greene's constitutional arguments. Therefore, the Court will not address the constitutional questions tardily raised by Greene in her Motion for Reconsideration and again in her appeal to this Court.

### E. THE BANKRUPTCY COURT PROPERLY DENIED THE MOTION FOR NEW TRIAL

The next issue before the Court is whether the bankruptcy court erred in denying Greene's Motion for New Trial. In the Fourth Circuit, a new trial may be granted under Federal Rule of Civil Procedure 59 "(1) if there are intervening changes in the law; (2) if new evidence has been discovered that was not available at trial; or (3) to correct a clear error of law or prevent a miscarriage of justice." *McCain v. Educ. Credit Mgt. Corp. (In re McCain)*, 353 B.R. 452, 461 (Bankr. E.D. Va. 2006) (citing *E.E.O.C. v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997)).

Greene does not specifically refer to any of those three factors in her appeal brief, but it appears that she is attempting to argue that new evidence had been discovered that was not available at trial. However, all of the evidence that she submitted in support of her Motion for New Trial was in fact available at the time of the trial. The problem was that Greene was not

13

diligent in finding and submitting that evidence. Greene attempts to justify her delay in obtaining the evidence by citing her alleged mental illness. As noted previously in this opinion, Greene never offered satisfactory evidence that supported her claims as to the existence and severity of any mental illness. Regardless, the standard for granting of a new trial in the Fourth Circuit is merely concerned with whether the evidence was available at trial, and the evidence submitted in Greene's Motion for New Trial was clearly available at that point. Therefore, the bankruptcy court did not abuse its discretion in denying the Motion for New Trial.

### F. THE BANKRUPTCY COURT PROPERLY DENIED GREENE'S MOTION TO AMEND THE FINDINGS OF FACT

As the bankruptcy court properly noted in its April 22, 2013, opinion, Greene provided no legitimate support for her requests that the court amend or change the relevant findings of fact. Since the purpose of amending findings under Rule 52(b) "is to permit the trial court to correct *glaring* errors of law or fact that are discovered upon reconsideration of an opinion," *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1358 (Fed. Cir. 2006) (emphasis added) and there are no such glaring errors on the face of the record, the bankruptcy court did not abuse its discretion in denying Greene's motion to amend the findings of fact.

### G. THE BANKRUPTCY COURT PROPERLY DENIED GREENE'S MOTION FOR CONTINUANCE

Continuances are generally granted at the discretion of the court. Greene's motion simply requested a continuance in order "to allow plaintiff the opportunity to obtain additional information and documents needed for trial." Pl.'s Mot. for Continuance of Trial, ECF No. 1. She did not provide any further information as to what information and documents she was seeking, and more importantly she did not provide any reason as to why she had been unable to procure that information and documents in the year and three months that had passed since her initial filing. Given that she provided no such reasons, the bankruptcy court did not abuse its

discretion in denying Greene's Motion for Continuance of Trial.

### H. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION BY DENYING APPOINTMENT OF COUNSEL OR GUARDIAN AD LITEM

Throughout this proceeding Greene has adamantly and repeatedly asserted that she suffers from severe mental illness. In keeping with this assertion she made numerous requests for the appointment of counsel or a guardian ad litem. However, as noted earlier in this opinion, Greene's evidence in support of her mental illness amounts to twenty year old medical records, an uninformative emergency room diagnosis, and her many conclusory allegations. Additionally, the bankruptcy court noted in its opinion that Greene "presented herself during the totality of the proceedings in this matter as a very articulate, well-spoken individual." *Greene*, 484 B.R. at 107. Considering that Greene failed to provide substantive evidence of her mental illness and the bankruptcy court, after observing her in person, did not note any indicia of mental illness, the Court finds that the bankruptcy court did not abuse its discretion in denying appointment of counsel or guardian ad litem for Greene.

### I. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN SUSTAINING DOE'S OBJECTION TO GREENE'S TESTIMONY CONCERNING A PRIOR DIAGNOSIS OF DISSOCIATIVE DISORDER

During trial the bankruptcy court sustained DOE's objection to Greene's testimony regarding a purported prior diagnosis of dissociative disorder. No other evidence was submitted during trial concerning that particular alleged diagnosis. Testimony regarding such a diagnosis would then clearly have been hearsay. Therefore, the court did not abuse its discretion in sustaining DOE's objection.

## V. GHOST WRITER WARNING

During the course of this appeal it came to the Court's attention that Greene, although proceeding *pro se* and receiving the forbearance afforded such status, was utilizing the services

of a ghost writer for many of her filings. The Court emphasizes that the practice of ghost-writing is in no way permissible in the Eastern District of Virginia, or any federal court for that matter.[2] Even if the ghost writer is not an attorney, such practice is still considered the unauthorized practice of law. Those who proceed *pro se* are afforded certain amounts of leniency that are not afforded represented parties. Ghost writing inexcusably abuses this leniency.

---

[2] To the extent that the Plaintiff is being advised by counsel in a "ghost-writer" capacity, such a practice is strongly disapproved as unethical and as a deliberate evasion of the responsibilities imposed on attorneys, and this Order serves as a warning to that attorney that his actions may be unethical and could serve as a basis for sanctions. *See Clarke v. United States*, 955 F.Supp. 593, 598 (E.D.Va.1997); *Laremont–Lopez v. Se. Tidewater Opportunity Ctr.*, 968 F.Supp. 1075, 1080–81 (E.D.Va.1997) ("[T]he practice of ghost-writing legal documents to be filed with the Court by litigants designated as proceeding *pro se* is inconsistent with the procedural, ethical and substantive rules of this Court."); *Chaplin v. DuPont Advance Fiber Sys.*, 303 F.Supp.2d 766, 773 (E.D.Va.2004) (quoting *Laremont–Lopez*, 968 F.Supp. at 1077, 1080) ("[T]his Court 'considers it improper for lawyers to draft or assist in drafting complaints or other documents submitted to the Court on behalf of litigants designated as *pro se*,'" and "the practice of ghost writing documents 'will not be tolerated in this Court.'").

## VI. CONCLUSION

For the reasons set forth in this opinion, the Court **AFFIRMS** the decisions of the bankruptcy court. At the time of this Order there are four motions filed by Greene that are outstanding in this case, all of which are rendered moot by this Order. Therefore, the Court **DENIES** the Motion for Guardian Ad Litem or Court Appointed Counsel, ECF No. 11, **DENIES** the Motion for Reconsideration of Order on Motion for Leave to Proceed in Forma Pauperis, ECF No. 22, **DENIES** the Second Motion for Leave to Proceed in Forma Pauperis, ECF No. 20, and **DENIES** the Motion for Rehearing and Motion for Rehearing en Banc on Appellant's Motion for Certification for Direct Appeal, ECF No. 27.

If Greene wishes to appeal this decision she may do so as a matter of right within sixty (60) days from entry of this Order.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Douglas
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Newport News, VA
October 2, 2013